UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALVIN FRANKLIN, JR.,

          Petitioner,          Case No. 1:15-cv-870

v.          Honorable Robert J. Jonker

MARY BERGHUIS,

          Respondent.
_____/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Alvin Franklin Jr. is presently incarcerated at the Parnall Correctional Facility in Jackson, Michigan. On September 11, 2012, an Ingham County Circuit Court jury convicted Petitioner of unarmed robbery and conspiracy to commit unarmed robbery, MICH. COMP. LAWS § 750.530, after a two-day trial and about fifteen minutes of deliberation. On October 17, 2012, the court sentenced Petitioner to six to twenty years for each count, concurrent with each other, but consecutive to the time Petitioner would serve for violating the terms of his parole.

Petitioner appealed his convictions to the Michigan Court of Appeals. The court of appeals affirmed the trial court by unpublished opinion dated April 24, 2014. *People v. Franklin*, No. 314425, 2014 WL 1679148 (Mich. Ct. App. Apr. 24, 2014). Petitioner applied for leave to appeal to the Michigan Supreme Court. On October 28, 2014, that

court denied leave. *People v. Franklin*, 854 N.W.2d 882 (Mich. 2014). Petitioner did not file a petition for certiorari in the United States Supreme Court.

On January 26, 2015, Petitioner filed his initial petition for writ of habeas corpus in the United States District Court for the Eastern District of Michigan. That court dismissed the petition without prejudice on March 6, 2015, because Petitioner raised three claims, but he had only exhausted his state court remedies with respect to one. *Franklin v. Haas*, No. 15-cv-10346, 2015 WL 998448 (E.D. Mich. Mar. 6, 2015). Petitioner dropped the unexhausted claims and refiled his petition in this Court on August 24, 2015, raising only one issue:

> PETITIONER WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO CONFRONT [A] WITNESS ON CROSS-EXAMINATION IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

(Pet., ECF No. 1, PageID.5.)

On May 10, 2016, Respondent filed an answer to the petition, (ECF No. 9), along with the state-court record, pursuant to Rule 5, Rules Governing § 2254 Cases, (ECF No. 10).[1] Upon review and applying the standards required by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA), I find that Petitioner's claims are without merit. Accordingly, I recommend that the petition be denied.

---

[1]The Rule 5 materials include several transcripts of the trial court proceedings. The transcripts shall be referenced as follows: September 10, 2012, Trial Transcript (Volume 1) (Trial Tr. I, ECF No. 10-2, PageID.__); September 12, 2012, Trial Transcript (Volume 2) (Trial Tr. II, ECF No. 10-3, PageID.__); and October 17, 2012, Sentencing Transcript (Sentencing Tr., ECF No. 10-4, PageID.__).

## Factual background

Petitioner offers the following factual synopsis:

[O]n or about April 21, 2012, Stephen Owel was working alone as a store clerk at the Speedway Gas Station, located at 2765 Eaton Rapids Road, Holt MI. He was in the rear office at approximately 2:15 a.m., when he heard the main entrance door chimes. He briefly looked up and saw two males enter the store; a few seconds later, he felt a person, who he identified as [Petitioner], grab his neck from behind.

The allege[d] assailant who was holding him by the neck said "if you value your life, you'll do what you are told." The three men then walked to the front cash register. Owel opened it and stepped back. The assailant, who Owel identified as Wilbert Brewer, told him to remove the cash and give it to him. Owel removed the cash, approximately $200.00, and handed it to Brewer. [Petitioner] then forced Owel face down on the floor. Owel said that [Petitioner] started pulling instant lottery tickets from the dispensers near the counter. The face value of the lottery tickets was approximately $60.00.

As Brewer was leaving the store, he told [Petitioner] to grab Owel's wallet. Owel stated that [Petitioner] took his wallet from his rear pants pocket. [Petitioner] left the store and Owel got up from the floor and activated the alarm button; he then went outside in the parking lot and saw the robbers getting into a U-Haul truck. They were still parked in the next door McDonald's parking lot. Owel fired five shots from his revolver into the U-Haul truck. He said he thought the bullet holes would make it easier to identify the truck and consequently the suspects.

Police officers obtained security camera footage from the Speedway and the next door McDonald's restaurant. Owel identified both Brewer and [Petitioner] as his assailants in photo lineups.

Wilbert Brewer had been a police officer in the Lansing Police Department for five years. He last worked in this capacity in 2002. He testified that he participated in the robbery of the Speedway gas Station with [Petitioner], after getting high on crack cocaine and running out of money for more drugs.

(Pet., ECF No. 1, PageID.3-4) (record citations omitted).

Petitioner's single habeas issue relates to his counsel's cross-examination of Mr. Brewer.[2] The Michigan Court of Appeals recounted the relevant exchange as follows:

Q.  You just testified that you were a former Lansing Police Officer?

A.  Yes.

Q.  Okay. For five years?

A.  Yes.

Q.  Okay. And how did your termination end [sic] there? Did you quit?

A.  No, I was terminated.

Q.  You were terminated. And why was that?

[The prosecutor].   Objection. Relevance.

THE COURT.   What's the relevance of that, ma'am?

[Defense counsel].   Your Honor, depending on the reason for his termination, if he is going to be credible as a witness and I would like to know a little bit of background.

THE COURT.   Well, I think that it's objectionable.

[Defense counsel].   Okay.

THE COURT.   You need to confine to this case. He said he got fired so that's all we need of that.

*Franklin*, 2014 WL 1679148 at *1.

---

[2]Wilbert Brewer pled guilty to unarmed robbery in exchange for the prosecutor's agreement to recommend an "up-front jail [sentence] not [to] exceed 12 months." (Trial Tr. II at 75, ECF No. 10-3, PageID.136).

- 4 -

Petitioner contends that the trial court, when it cut off questioning regarding the reason for Brewer's termination, deprived Petitioner of his Sixth Amendment right to confront Mr. Brewer.

## Discussion

### I. AEDPA Standard

This action is governed by the AEDPA. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529

U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. \_\_\_, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## II. The Right to Confront Witnesses

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. CONST., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). The Supreme Court long has read this right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242-43 (1895), and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). As the Supreme Court early held:

> The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox*, 156 U.S. at 242-43, *quoted in California v. Green*, 399 U.S. 149, 157-58 (1970). While the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee "'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013); *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999).

"Unconstitutional limitations on cross-examination are normally subject to harmless-error analysis." *Hargrave v. McKee*, 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Van Arsdall*, 475 U.S. at 681-84). On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave*, 248 F. App'x at 728 (citing *Fry v. Pliler*, 551 U.S. 112, 129 S. Ct. 2321, 2328 (2007)); s*ee also Vasquez v Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638. In determining whether the restriction was harmless, a court must consider a number of factors, "'includ[ing] the importance

of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *Hargrave*, 248 F. App'x at 728 (quoting *Van Arsdall*, 475 U.S. at 684).

The Michigan Court of Appeals concluded that the trial court might have overstepped the "wide latitude" it enjoyed when it cut short the cross-examination of Mr. Brewer:

> We conclude that the trial court's decision to exclude as irrelevant Brewer's testimony about the reason why he was terminated was incorrect. There was no offer of proof regarding the reasons for Brewer's termination. Thus, these reasons may have been evidence that Brewer was not a credible witness. For instance, if the Lansing Police Department fired Brewer for falsifying police reports, it would be highly relevant to his credibility. Additionally, there is no indication that the trial court considered why the Lansing Police Department fired Brewer and found the evidence unfairly prejudicial or only marginally relevant, or excluded the evidence on the basis of some other reasonable concern.

*Franklin*, 2014 WL 1679148 at *2. Nonetheless, the court of appeals affirmed Petitioner's convictions and sentences because Petitioner had "not shown that the trial court's decision, even if incorrect, prejudiced him." *Id.* The error, the court concluded, was harmless:

> Though Franklin contends that the Lansing Police Department may have fired Brewer for misconduct or dishonesty, it is equally likely that the Lansing Police Department may have terminated his employment for some reason not bearing on his credibility as a witness, such as downsizing. There is no indication that Brewer's testimony would have affected the jury's determination of his credibility and thus affected the outcome of Franklin's proceedings.

> Further, when properly admitted evidence corroborates a witness's improper testimony, it is less likely that the error affected the outcome of the lower court proceedings. Here, Owel testified that Franklin and Brewer came into the store together, rushed into his office, and then worked together to take money, lottery tickets, and his wallet before fleeing. Owel's testimony strongly corroborated Brewer's testimony, and provided evidence of the unarmed [robbery.]

*Id.* (footnote omitted).

The state court's determination is wholly consistent with, and certainly not contrary to or an unreasonable application of, the clearly established federal law cited above. Moreover, the factual determinations the state court relied upon to make its determination of harmlessness are patently reasonable on this record. Even if Mr. Brewer was shown to have been fired from the Lansing Police Department for some reason that called his credibility into question, the overwhelming corroborating testimony firmly established the credibility of his testimony regarding Petitioner's role in the planning and execution of the unarmed robbery. Any error was harmless under the *Brecht* standard. Accordingly, Petitioner has failed to demonstrate that he is entitled to habeas relief.

### Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment

of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

Examining petitioner's claim under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claim to be debatable or wrong. Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

**<u>Recommended Disposition</u>**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated: May 23, 2017                    /s/ Phillip J. Green
                                       PHILLIP J. GREEN
                                       United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).